### James Wilson v. The Village of Cedarville.

1. ROADS AND BRIDGES—*Act of 1879 Repealed by Sections 79 and 124 of Act of 1883.*—The act of 1879 in regard to roads and bridges was repealed by sections 79 and 124 of the act of 1883.

2. SAME—*Sections 13 and 14 of the Act of 1883 Apply Solely to Towns Under the Cash System.*—Sections 13 and 14 of the act of 1883 apply solely to towns which are under the cash system and not to towns which are under the labor system.

3. SAME—*Section 119 of the Act of 1883 Applies Only to Towns Under the Labor System.*—Section 119 of the act of 1883 governs and applies only to towns under the labor system, and has no application to towns under the cash system.

4. SAME—*Section 16, Chap. 121, R. S., Applies Only to Towns Under the Cash System.*—Section 16 of the road and bridge act applies only to towns under the cash system and nothing expressed therein gives a village within the district one-half of the tax collected in the town, where such town is acting under the labor system.

5. SAME—*Sections 83 and 117, Ch. 121, R. S., Give a Village No Title to a Road and Bridge Tax.*—The provisions of sections 83 and 117 of the road and bridge act are confined to the tax "for road purposes only" and give a village within such town no title to a tax for roads and bridges.

6. SAME—*Act of 1883 Established Two Distinct Systems.*—The act of 1883 established two distinct systems, and gave each town an option under which plan it would act.

7. SAME—*Provision Limited to One System May Not be Extended to the Other by Implication.*—A provision expressly limited to one system of levying and enforcing a tax under the road and bridge act of 1883 may not by implication be extended to the other system.

8. SAME—*Procedure for Levying and Enforcing Tax Under the Two Systems.*—The procedure for levying and enforcing the tax under the road and bridge act in a town under the cash system is precise and must be strictly followed; while the procedure established by sections 117 and 119 for levying and enforcing such a tax in labor towns must be followed, yet it is different from that fixed for cash towns, being less definite and precise in several respects.

Appeal from the Circuit Court of Stephenson County; the Hon. James S. Baume, Judge presiding. Heard in this court at the October term, 1902. Reversed. Opinion filed April 21, 1903.

O. E. Heard and H. C. Hyde, attorneys for appellant.

Burchard & Burrell, attorneys for appellee.

Mr. Justice Dibell delivered the opinion of the court.

Stephenson county is under township organization. In matters relating to roads and bridges and taxation in support thereof, it is governed by the act of 1883 relative to roads and bridges in counties under township organization. At the date of the levy and collection of the tax hereinafter mentioned, the town of Buckeye, in said county, was acting under the labor system provided for by section eighty and subsequent sections of said act of 1883. For the year 1897 a road and bridge tax was levied and collected in said town. James Wilson was collector of taxes in that town for that year. The village of Cedarville is within said town of Buckeye, and is incorporated, and in said village the streets and alleys are under the care of the municipality. Wilson collected $138.07 of said tax on property lying within said village. He paid no part of said tax to the village, but paid it all to the treasurer of the commissioners of highways. The village brought this suit against Wilson to recover from him one-half the tax so collected within the village. The suit was begun before a justice. At the trial of the cause in the Circuit Court on appeal a jury was waived, the facts were stipulated, and defendant offered two propositions of law. The first was that under the stipulated facts the plaintiff as a matter of law was not entitled to recover. The second was that the road and bridge tax collected within the corporate limits of the village under section 119 of said statute belonged to and was properly paid to the treasurer of the commissioners of highways. The court refused to hold these propositions, and defendant excepted. The court found for plaintiff and gave it judgment for $67.65, being one-half said tax after deduct-

ing the collector's commissions. Defendant appeals and assigns for error the refusal of said propositions of law.

Section 10 of said statute requires the commissioners of highways to elect one of their number treasurer, and enacts that " the treasurer so chosen shall receive and have charge of all moneys raised in the town for the support and maintenance of roads and bridges, excepting such portions of the moneys as are hereinafter directed to be paid to the authorities of incorporated villages, towns and cities." In the statement under which the tax in question was levied and extended the highway commissioners certified that they were proceeding under section 119 of the act of 1879. The highway commissioners were in error in certifying they were acting under the statute of 1879, for that act was repealed by sections 79 and 124 of the act of 1883; but section 119 of the act of 1879 and section 119 of the present statute are in substantially the same words so far as the purposes of the tax are concerned. The tax was in fact levied and collected under section 119 of the act of 1883, which alone gave the commissioners in towns under the labor system authority to levy such a tax. The tax, therefore, was raised for " the support and maintenance of roads and bridges," which is the subject of said section 119; and under that part of section 10 of the act of 1883, above quoted, the treasurer of the commissioners of highways was the person entitled to receive and have charge of these moneys so raised, unless later portions of the act directed that they be paid to the authorities of incorporated villages, towns and cities.

There are two provisions in the act of 1883 which require money to be paid to corporate authorities. Section 16, after providing for a certificate of the rate per cent agreed upon by virtue of sections 13 and 14 of the act, and also of the amount required to liquidate road and ditch damages, and for the manner of extending and collecting the taxes and paying them to the treasurer of the commissioners, further enacts as follows :

" Provided, that one-half the tax required to be levied in

sections thirteen and fourteen and collected for road and bridge purposes, on the property lying within an incorporated village, town or city, in which the streets and alleys are under the care of the corporation, shall be paid over to the treasurer of such village, town or city, to be appropriated to the improvement of roads, streets and bridges, either within or without said village, town or city, and within the township under the direction of the corporate authorities of such village, town or city; and provided, further, that when any of said tax is expended beyond the limits of said village, town or city, it shall be with the consent of the road commissioners of the town."

To this section the following was added in 1889 :

"Provided further, that in all cities of thirty-five thousand (35,000) inhabitants or upwards, all of said tax required to be levied and collected under said sections thirteen and fourteen within the limits of such city, shall be paid over to the treasurer of such city for city purposes."

These provisions are expressly confined to the tax levied and collected under sections 13 and 14. Sections 13 and 14 apply solely to towns which are under the cash system, and not to towns which are under the labor system. The tax here in question was not levied and collected under sections 13 and 14, and the town of Buckeye, having adopted the labor system, had no authority to levy and collect a tax under said sections 13 and 14, but could only levy and collect such a tax under section 119, which last-named section governs and applies only to towns under the labor system, and has no application to towns under the cash system. It follows nothing expressed in said section 16 gives the plaintiff here any right to one-half this tax.

Section 80 of the act provides for submitting to the voters of any town a proposition to pay in labor the district labor and property road tax, and that if the proposition shall be adopted then the following sections of said act shall be in force in said town, but until so adopted said following sections (except the repealing section) shall not be in force in any town in the state. It is stipulated this labor system was adopted in the town of Buckeye before the tax in question was levied. The sections of the act following

section 80 were therefore in force in that town. Section 83, so put in force in the town of Buckeye, after providing for the levy of a road tax, "for the making and repairing of roads only," upon the real, personal and railroad property of the town, enacts as follows:

"Provided, that the tax on the property levied for road purposes only, lying within an incorporated village, town or city, in which the streets and alleys are under the care of the corporation, shall be paid over to the treasurer of such village, town or city, to be appropriated to the improvement of roads, streets and bridges, either within or without said village, town or city, and within the township, under the direction of the corporate authorities of such village, town or city: Provided, further, that when any of said tax is expended beyond the limits of said village, town or city, it shall be with the consent of the road commissioners of the town. And, provided, further, that the authorities of such incorporated town, city or village, may, at any time, direct the collector not to collect the tax so levied within the limits of such incorporated town, city or village."

Section 117 provides for the collection and payment of delinquent taxes levied for road purposes, and recognizes the right of incorporated villages, towns and cities, to a part thereof. It is not claimed that the tax here in question was raised under and by virtue of said section 83, or that it is the tax specified in said section and in section 117. The provisions above quoted from section 83 for paying to the village the tax on property lying within the village, and the provisions of section 117 to the same effect, are confined to the tax specified in those sections, which is a tax "for road purposes only." The case before us relates to a different tax entirely, namely, the road and bridge tax. Sections 83 and 117 therefore give the village of Cedarville no title to the tax here in question. It is not claimed in argument that there are any other provisions of the present statute which direct the payment of the road and bridge tax levied and collected in any town to the corporate authorities of cities and villages located within such town. There is therefore no express provision of the statute sustaining the

claim of plaintiff to the tax in question. Recurring to section 10 of the act and to its direction that the treasurer of the commissioners of highways "shall receive and have charge of all moneys raised in the town for the support and maintenance of roads and bridges, excepting such portions of the moneys as are hereinafter directed to be paid to the authorities of incorporated villages, towns and cities," and finding in that statute no directions for paying this tax to plaintiff, it seems to follow as a necessary conclusion that defendant paid this tax to the proper officer, and that the village has no lawful claim thereto.

It is, however, argued it is unjust that the road and bridge tax collected upon property within a village should all be paid to the town authorities and expended outside the village, and that it is within the spirit of the act that the village should receive half the money collected within it, and that the spirit of the act and not its letter should prevail. The question whether the enforcement of such a statute appears just or unjust, reasonable or unreasonable, depends upon the facts of each particular case. It is easy to imagine cases where it would seem unfair to expend outside a village or city all the road and bridge tax collected within it. But villages usually derive their support from the surrounding country. It is often the trade of the farmers which gives value to the property inside the corporation, especially in the case of small villages. The inhabitants of the village may find it to their business interest to have the roads leading to the village made much better than the people outside care to make them. First-class roads may in such a case enhance the value of the village property more than the value of that outside. Suppose a case where streams near the village, but outside its boundaries, require several good bridges to make the village convenient of access by the farmers, who, if the bridges are not built, will naturally go to another village to trade. It might be unjust to compel the farming community to build bridges which they do not need and which do not benefit them, but which will largely benefit the people in the village and

enhance the value of the property there. Yet often the village or city contains more voters than the rest of the town, and can elect the highway commissioners and govern their policy in a way beneficial to the village or city and detrimental to the interests of those people who live outside the corporation. Under section 16 of the statute, if a city contains 35,000 inhabitants it receives all the road and bridge tax collected on property within the corporation, but if it has one less than 35,000 inhabitants the town authorities get half the tax. It is not easy to see why from the standpoint of abstract justice the one city is any more entitled to the whole tax than is the other. Again, under the labor system the village gets all the tax levied " for road purposes only " collected on property lying within the village under section 83, and not merely one-half thereof. If, now, by construction, the courts also give the village one-half the road and bridge tax collected under section 119, villages in towns which have adopted the labor system will get a larger proportion of the entire tax levied by the highway commissioners than will villages in towns under the cash system, and a like injustice may be inflicted upon the latter. It is not certain that by the view we take municipal corporations will get less in towns under the labor system than in towns under the cash system. It is only where the road and bridge tax exceeds the tax for road purposes only, that an inequality may arise. If the question to whom the tax raised under section 119 shall be paid is to be determined by the justice of the result, there will be no fixed rule, but the distribution of that tax in each labor town having a village within it must depend upon the facts of that particular case, a result the legislature certainly never intended. In deciding a similar question under an earlier road and bridge act, the Supreme Court said:

" There is, it is true, in this an apparent incongruity, and it may be injustice; but we do not feel called upon to discuss either its wisdom or justice, but leave these for the consideration of the legislature." Baird v. People, 83 Ill. 387.

The provisions for the division of taxes between a town

and a municipality within it, whatever they may be, are not so much an attempt to do justice, where exact justice for all cases can not be established by a general rule, as a compromise of conflicting interests in such manner as the legislature may deem best. The true question for the courts is not, what disposition of these taxes would be most reasonable or just, but what rule has the legislature in fact adopted. The chance that such statute may produce an inequality in its actual enforcement is a matter for legislative consideration and not for the courts.

It is also argued the course of prior legislation shows the legislature intended the principle of dividing between the town and village the road and bridge tax collected on property in the village, should be applied to the tax collected under section 119. It will be sufficient to consider the laws upon this subject for counties under township organization enacted since the adoption of the present constitution. The twelfth paragraph of section 32 of the road and bridge act of 1872, provided for a tax of not exceeding forty cents on each $100 of assessed valuation, and required that so much of that tax as was collected upon property lying within any incorporated village, town or city, in which the streets and alleys are under the care of the corporation, should be paid to the treasurer thereof. Section 42 established a tax for highway purposes, and made no provision for its payment to village or city authorities. Section 16 of the road and bridge act of 1873 provided for a road tax of not exceeding forty cents on each $100 of assessed valuation, and directed that the tax on property lying within any municipality wherein the streets and alleys were under the care of the corporation should be paid to the treasurer thereof. Section 120 established a road and bridge tax. Section 123 provided that the tax so collected should be paid to the treasurer of the commissioners of highways "except as provided in section 16 of this act." It was held in Baird v. The People, *supra*, that the plain meaning of said section 123 was that that part of the road and bridge tax collected under section 120 on prop-

erty within the village or city should be paid to the municipal authorities as provided in section 16 of said act. Section 81 of the road and bridge act of 1877 contained two clauses. The first clause provided for a tax, not exceeding forty cents on each $100 of assessed valuation, " for the making and repairing of roads only," and contained a proviso to the effect that that tax on property lying within a municipality, in which the streets and alleys were under the care of the corporation, should be paid over to the treasurer thereof, to be appropriated to the improvement of roads, streets and bridges, either within or without said corporation, under the direction of the corporate authorities; and that when any of said tax was expended beyond the limits of the municipality, it should be with the consent of the road commissioners. The second clause provided for a road and bridge tax. Section 84 was to the effect that the tax so collected should be paid to the treasurer of the commissioners of highways, except as provided in the first clause of section 81. These provisions were in substantially the same language as those in the act of 1873; and following the construction of the last named act, adopted in Baird v. The People, *supra*, it was held in City of Galena v. Comrs. of Highways, 2 Ill. App. 255, McFarland v. The People, 2 Ill. App. 615, and The People v. Wilson, 3 Ill. App. 368, that under the act of 1877, also, the entire tax raised under both clauses of section 81 upon property located within a municipality, was payable to its authorities. In 1879 another road and bridge act was adopted for counties under township organization. Section 16 thereof required the levy of a tax at a rate not exceeding forty cents on each $100 of assessed valuation, " for the making and repairing of roads only," and contained a provision that that tax on property lying within a municipal corporation, in which the streets and alleys were under the care of the corporation, should be paid to the treasurer thereof, to be appropriated to the improvement of roads, streets and bridges, either within or without said municipality and within the township, under the direction of the

corporate authorities; but when expended beyond the limits of said corporation, it should be with the consent of the road commissioners; and that the authorities of such corporation might at any time direct the collector not to collect the tax so levied within the corporate limits. Section 119 provided for the levy and collection of a road and bridge tax upon the real and personal property of the town.  Section 122 was as follows :

" The tax so collected shall be paid to the treasurer of the commissioners of highways, by the collector, as fast as the same is collected, except such rate per cent as shall be allowed for collecting the same.  Provided, that the commissioners of highways may, in their discretion, expend such funds upon roads and bridges at any place within their respective towns; but when expended, within the limits of any incorporated town, city or village, the same shall be done by and with the consent of the corporate authorities."

It was decided in The People v. Suppiger, 103 Ill. 434, that the road and bridge tax levied and assessed under section 119 of said act of 1879 was distinct from the road tax levied and assessed under section 16 thereof, and that the road and bridge tax levied and collected under section 119 must be paid to the treasurer of the commissioners of highways of the town imposing the tax.

To recapitulate :  The following were the prior statutory provisions since 1870 relating to a tax for roads or roads and bridges levied and collected by town officers upon property in a municipality within such town:  By the act of 1872 the city or village got all the tax so collected, except the highway tax.  By the act of 1873 the city or village received all of both the road tax and the road and bridge tax levied and collected within its limits.  The act of 1877 was to the like effect, but permitted the city or village to expend the tax outside the corporation with the consent of the highway commissioners.  The act of 1879 gave the city or village all the road tax so collected, with permission to spend it outside the corporation with the consent of the highway commissioners, but gave it none of the road and

bridge tax so collected. The latter tax, however, the highway commissioners were permitted to expend within the city or village with the consent of the corporate authorities. The only respect in which this legislation shows any uniform policy, is that under each law the municipality got some tax levied by the highway commissioners and collected within its borders. There the uniformity ends. Under one law the city or village got all the road and bridge tax collected within its limits; under another it received all the road tax so collected; and under another all of both kinds of tax so collected. In the respect in which this prior legislation is uniform, the provisions of the statute of 1883 for towns under the labor system do not depart therefrom. That statute gives the municipality some part of the tax levied by the highway commissioners. It gives the city or village within a labor town all the road tax so collected within the corporation. We find no uniform course of legislation since 1870 requiring us to hold the legislature intended by the act of 1883 to give a municipality in a labor town any other tax, and to strain its plain language to force that result.

The act of 1883 now in force and under which the tax in question was collected, repeals the act of 1879. Section 119 of the present act, under which the tax in question was levied, is somewhat fuller in some details, but is not materially different from section 119 of the act of 1879, except that in the act of 1879 section 119 provided for the only road and bridge tax, while in the act of 1883 section 119 establishes a road and bridge tax only for towns under the labor system. In the act of 1883, however, the provisions contained in section 122 of the act of 1879 above quoted are wholly omitted, and section 122 of the present act is devoted to another subject. The specific direction which the act of 1879 contained, in section 122 thereof, that the tax levied under section 119 of said act should be paid to the treasurer of the commissioners of highways, is omitted from the act of 1883. Plaintiff argues that the repeal of the old statute and the omission of that section from the new statute,

shows a legislative intent that the tax collected under section 119 of the act of 1883 upon property within a municipality should be divided equally between the town and the municipal authorities, the same as provided for towns under the cash system. We have been unable to adopt this conclusion. That part of the act of 1883 governing the levy and collection of taxes which is prior to section 80 was made to apply only to towns which preferred the cash system. It directed what should be done in such towns, where part of the tax arose from property located within the limits of a municipal corporation which was itself within the boundaries of the town, and gave the municipality half the tax. By the amendment of 1889, it gave the municipal authorities all the tax so collected within the corporation if it had a population of 35,000 or upward, and half the tax if it had less. The act of 1883 and the amendment of 1889 each allowed the municipality in a cash town to expend the tax outside the limits of the corporation if the corporate authorities wished to do so and the highway commissioners consented. Section 16 in the act of 1883 and also as amended in 1889, expressly limited that provision for the division of a tax between the highway commissioners and the corporate authorities to the tax levied and collected under sections 13 and 14 of the act, which in effect limited it to towns acting under the cash system. From section 80 on to its repealing section the provisions of the act of 1883 relative to taxation apply only to another class of towns, namely, those which adopt the labor system. It is clear that the legislature had in view the question of the disposition to be made of taxes collected upon property situated within incorporated villages, towns and cities, in towns under the labor system, for it established a road tax for such towns of not exceeding forty cents on each $100 of assessed valuation, and provided that all said tax collected upon property within a municipality which had the care of its streets and alleys should be paid to the treasurer thereof. Instead of giving half, it gave the whole tax to the municipality, regardless of the population it contained. It also gave the

corporate authorities power to direct that the tax so levied should not be collected within the corporate limits. As the legislature had clearly in mind the existence of municipalities within labor towns, if it had designed the tax collected under section 119 within a municipality in such towns should all or any part of it be paid to the corporate authorities, we must assume it would have so provided, especially as the Supreme Court had decided in People v. Suppiger, *supra*, the year before the act of 1883 was adopted, that the tax collected under section 119 of the act of 1879 was payable to the treasurer of the highway commissioners. By the act of 1883, the legislature made provision for a division in case of towns under the cash system, and expressly limited the division to taxes levied under sections 13 and 14. It made provisions for villages in towns under the labor system, and gave them all the tax levied " for road purposes only," and collected within such villages. It limited its provision for villages in labor towns to the road tax only. It did not follow the same course in the two classes of towns, but made the proportion of the division dependent upon population in towns under the cash system; and gave the road tax to the villages, independent of population, in towns under the labor system. By giving the village in a labor town all the road tax collected within it, and also permitting it to prevent its collection if it preferred, the legislature plainly indicated it intended cash towns and labor towns should not be governed by the same rule in regard to these taxes, but by a wholly different rule. We must assume that the legislature knew of the specific directions it enacted in section 10, that all moneys raised in the town for roads and bridges should go to the treasurer of the commissioners of highways unless it was in that statute directed to be paid to the authorities of incorporated villages, towns and cities. That specific direction made it unnecessary to re-enact the provisions of section 122 of the act of 1879. To have done so would have been a mere repetition. The legislature provided for a road and bridge tax to be collected in towns

under the labor system, and did not provide any part should be paid to the authorities of incorporated villages, towns and cities, but left that tax to be paid to the treasurer of the highway commissioners under section 10.

The act of 1883 was not a mere revision of prior statutes. It, for the first time since 1870, established two distinct systems, and gave each town an option under which plan it would act. These systems differ materially in their details. Besides the differences already pointed out, we may note that the procedure for levying and enforcing such a tax in a cash town is precise, and must be strictly followed. (C. & N. W. Ry. Co. v. The People, 193 Ill. 594; same v. same, 197 Ill. 411.) While the procedure established by sections 117 and 119 for levying and enforcing such a tax in labor towns must be followed, yet it is different from that fixed for cash towns (C. & N. W. Ry. Co. v. The People, 184 Ill. 174), and it is less definite and precise in several respects. The two systems are wholly independent of each other in all matters relating to the levy and distribution of taxes. We find no warrant for holding that a provision expressly limited to one system should be extended by implication to the other, or that the legislature so intended.

We have carefully considered Village of Iuka v. Schlosser, 97 Ill. App. 222, upon which plaintiff chiefly relies, but, notwithstanding what is there cogently expressed we have felt compelled to follow what seems to us the controlling language of the statute.

We are of opinion that the court erred in refusing to hold as the law the propositions of law presented by defendant, and that plaintiff was not entitled to recover. The judgment is therefore reversed.

Finding of Facts to be incorporated in the judgment:

We find that appellant, as collector of the taxes levied for 1897 in the town of Buckeye, in Stephenson county (under township organization), collected certain sums as road and bridge taxes upon property located within the village of Cedarville, a municipality within said town, the streets and alleys of which were under the care of the village; that the

labor system was in force in said town when said taxes were levied and collected; that appellant paid to the treasurer of the commissioners of highways of said town all the tax so collected; and that the village of Cedarville was not entitled to any part thereof, and was not entitled to recover the same in this cause.